BARTON v. McGUIRE.   (No. 5672.)

(Court of Civil Appeals of Texas. Austin. Oct. 18, 1916.)

1. EVIDENCE ⬳271(9), 314(1) — HEARSAY — SELF-SERVING DECLARATIONS.

In an action against a realty broker by the owner of land to recover the difference between the price actually paid and the price at which he accounted to the owner, though it was a controverted question whether the broker sold as the owner's agent, or whether he verbally contracted with the owner to purchase the land at the lower price, and thereafter sold it himself to the buyer for the higher price, and it was also a controverted question whether the broker agreed with the owner to deposit with a bank the sum of $1,000 as earnest money, and whether or not he made such deposit, the court properly excluded testimony that, when he made such deposit, the broker stated that he had that day bought the property from the owner at the lower price, and was depositing the $1,000 as earnest money pursuant to verbal agreement; the evidence being hearsay and the statements self-serving.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1078, 1168; Dec. Dig. ⬳271(9), 314(1).]

2. EVIDENCE ⬳121(6)—STATEMENTS OF PARTY—RES GESTÆ.

The statements made by the broker, when depositing his $1,000 check in bank, and on the same day, that he had that day verbally bought the land from the owner over the telephone, and was depositing the money as earnest, were not so connected in point of time or otherwise with the transaction between broker and owner as to render them admissible as res gestæ.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 316, 1117, 1119; Dec. Dig. ⬳121(6).]

3. EVIDENCE ⬳271(9), 314(1) — HEARSAY — SELF-SERVING DECLARATIONS.

A conversation between the broker and an attorney, shortly after the telephone conversation, in which the broker told the attorney that he had made such a telephone contract with the owner, and its terms, was inadmissible as hearsay and self-serving.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1078, 1168; Dec. Dig. ⬳271(9), 314(1).]

4. APPEAL AND ERROR ⬳1011(1)—REVIEW—FINDINGS—CONFLICTING EVIDENCE.

Appellate courts do not undertake to determine what constitutes a mere preponderance of testimony, and do not set aside findings of trial courts on conflicting evidence, unless they are so contrary to the overwhelming weight of the testimony as to indicate some improper motive or influence.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3983–3988; Dec. Dig. ⬳1011(1).]

---

⬳For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**5. BROKERS ⊕⇒36—RATIFICATION OF AGENT'S FRAUD.**

Though the owner, without notice of the broker's fraud, accepted from him money for an excess in acreage, transferred notes executed by the broker as part of the consideration for the land, and executed a new deed, he did not thereby ratify the broker's acts.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. §§ 29, 30; Dec. Dig. ⊕⇒36.]

**6. ESTOPPEL ⊕⇒92(3)—ESTOPPEL IN PAIS.**

Nor did such facts constitute an estoppel of the owner to sue the broker.

[Ed. Note.—For other cases, see Estoppel, Cent. Dig. § 262; Dec. Dig. ⊕⇒92(3).]

**7. APPEAL AND ERROR ⊕⇒1151(2)—DISPOSITION—CORRECTION OF JUDGMENT.**

The facts in respect to the amounts received by the broker and his commission being undisputed, error committed in rendering judgment for an excessive amount will be corrected by the Court of Civil Appeals without remanding for new trial.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4498–4500, 4503–4505; Dec. Dig. ⊕⇒1151(2).]

Appeal from District Court, Lampasas County; John D. Robinson, Judge.

Suit by W. H. McGuire against L. R. Barton. From a judgment for plaintiff, defendant appeals. Judgment reformed and affirmed.

Matthews & Browning, of Lampasas, Dayton Moses, of Ft. Worth, and T. E. Hammond, of Burnet, for appellant. Word & Walker and M. M. White, all of Lampasas, for appellee.

KEY, C. J. W. H. McGuire was the owner of a farm and ranch situated in Burnet county and embracing 1,235.7 acres of land. On the 31st day of December, 1913, he entered into a written contract with L. R. Barton, a real estate broker at Bertram, Tex., by the terms of which he listed the property with Barton for sale. That contract was somewhat ambiguous as to the minimum price for the land and Barton's compensation for selling it, but perhaps was susceptible of the construction that Barton was to have as compensation all that he sold the land for in excess of $12.50 per acre. In February, 1914, Barton prepared and sent by mail to McGuire a supplemental contract, modifying the original contract in reference to some of the terms upon which the sale might be made, but not otherwise modifying that contract. McGuire received that contract, added to it a stipulation that the land must net him at least $12.50 per acre, and that Barton was to get his 5 per cent. commission from the sales price of the land. In other words, the addition which McGuire wrote into the supplemental contract deprived Barton of his right to all the excess over $12.50 per acre for which he might sell the land, and stipulated, in effect, that he would receive no compensation unless he sold the land for more than $12.50 per acre, and was then to have 5 per cent. of the total consideration, and not

that much, if it would result in reducing the amount received by McGuire to less than $12.50 per acre. McGuire then returned the supplemental contract to Barton, and there is conflict in the testimony as to whether he accepted it and acted upon it or repudiated it on account of the additional clause written therein by McGuire. In February, 1915, McGuire instituted this suit against Barton, alleging that the latter, while acting as plaintiff's agent, had fraudulently induced the plaintiff to convey the land to him (Barton), and had immediately sold the land to one J. E. Howze for $18 per acre. In his answer Barton denied that he ever assented to or acted upon the supplemental contract of February 25, 1914, and further alleged that on February 28, 1914, he entered into a contract over the telephone with the plaintiff for the purchase of the land by the defendant at $12.50 per acre, which contract, he alleges, was carried out and put in writing on March 6, 1914, on which day the plaintiff conveyed said land to the defendant, who paid plaintiff therefor in cash and notes as agreed on in the telephone contract. Appellant testified that he bought the land from appellee as alleged in his answer. Appellee testified to the contrary. There was a nonjury trial, which resulted in a judgment for the plaintiff for $5,684.22, and the defendant has prosecuted an appeal.

The trial judge filed the following findings of fact and conclusions of law:

"Findings of Fact.

"(1) I find that on December 31, 1913, and at the other dates hereinafter mentioned, the defendant was engaged as a real estate agent at Bertram, Burnet county, Tex.

"(2) That on said December 31, 1913, the plaintiff listed the land described in plaintiff's petition with the defendant for sale upon the terms as specified therein, and in said contract specified that said land was to net the plaintiff $12.50 per acre, agreeing therein to pay said Barton a commission of 5 per cent. of the sales price of said land.

"(3) That thereafter, on the 25th day of February, 1914, the defendant sent to the plaintiff an additional or supplemental contract of sale, and at the same time requested that plaintiff give him an option on said land.

"(4) That plaintiff refused to give an option on said land to defendant.

"(5) That plaintiff signed said supplemental or additional contract after having added therein a clause that said land was to net plaintiff the sum of $12.50 per acre, the defendant to receive his commission of 5 per cent. on the sales price of said land.

"(6) I find that at the time of the sale of plaintiff's land as hereinafter stated the defendant was acting under and by virtue of said supplemental contract.

"(7) I further find that thereafter, on the 28th day of February, 1914, the defendant by telephone advised the plaintiff that he had a purchaser for said land, the defendant at that time being in Burnet county, and the plaintiff in Lampasas, Lampasas county, Tex.

"(8) That on the 1st day of March, 1914, plaintiff met defendant on said land in Burnet county, Tex., and advised defendant that he

would sell the land at the price of $12.50 per acre, and discussed the terms and conditions of said sale with the defendant.

"(9) Thereafter, on the 4th day of March, 1914, the defendant, being in Austin, Tex., wired the plaintiff at Lampasas, Lampasas county, Tex., 'deal closed on your ranch with $2,000 terms about as agreed on February 28th, but some better, please make deed and abstract at once.'

"(10) That thereafter, on the 6th day of March, 1915, defendant came to Lampasas, Lampasas county, Tex., and represented to plaintiff that he had sold said land to one J. E. Howze at Austin, Tex., at the price of $12.50 per acre, but that before said deal could be closed that it would be necessary for the liens existing against plaintiff's said land to be removed, or placed in notes to suit the purchaser, and that in order to protect the defendant in his forfeit of $1,000 it would be necessary for plaintiff to execute his deed to defendant and place same in the bank to protect the loan.

"(11) That on March 6, 1914, plaintiff so executed his deed and placed same in the bank as directed by defendant.

"(12) That thereafter said deed was returned to plaintiff to make some changes in same, and on May 20, 1914, was re-executed and delivered to defendant.

"(13) That plaintiff received for said property the sum of $15,446.25.

"(14) That on the 22d day of May, 1914, defendant conveyed said premises to said J. E. Howze for the sum of $22,242, being $5,684.22 more than defendant had represented to plaintiff he was getting for said land, less the 5 per cent. commission due the defendant.

"(15) I further find that plaintiff did not ascertain that defendant had received said sum for said land until after he had executed his deed to defendant and until after defendant had transferred said property to the purchaser, Howze.

"(16) I further find that during the pendency of said sale plaintiff discovered that there were 3.7 acres more in his said place than he had specified in his said sales contract, and that defendant had agreed to secure from the purchaser the sum of $12.50 for said excess.

"(17) That after said sale was closed, and before plaintiff was informed of the facts as to how much defendant had received for said land, plaintiff wrote to defendant requesting that defendant remit said sum of $12.50 per acre for said excess.

"(18) That defendant on May 29, 1914, and on June 2, 1914, advised plaintiff by letter that he had been unable to collect said sum of $12.50 per acre for said excess from said J. E. Howze.

"(19) That thereafter, on or about June 8, 1914, plaintiff wrote to defendant advising him that he had learned that defendant had secured $18 per acre for said land, and demanded that defendant remit to him the balance of the purchase price of said land less his (defendant's) commission of 5 per cent. on the sales price of same.

"(20) That thereafter on June 10, 1914, the defendant remitted to plaintiff said sum of $12.50 per acre for said excess.

"(21) I find that plaintiff retained said sum of $12.50 per acre for the excess in said land after full knowledge of the facts of defendant's having sold the same for $18 per acre, and further that defendant had prior thereto transferred said land to Howze.

"(22) I find that after plaintiff had received knowledge of the facts of the sale to Howze, he (plaintiff) sold or exchanged some of the purchase-money notes for said property, and also received from J. E. Howze the payment of two of said notes.

"(23) I find that J. E. Howze was an innocent purchaser of said property for value with no knowledge of the fraud of the defendant.

"Jno. D. Robinson, Judge.

"Conclusions of Law.

"I therefore conclude as a matter of law that the act of plaintiff in receiving said sum of $12.50 per acre for the excess in said land and in transferring certain of said notes and receiving payment of two of same was not a ratification of the fraud of defendant. I therefore conclude as a matter of law that plaintiff should recover of and from the defendant the sum of $5.684.22, with interest thereon from May 21, 1914, at the rate of 6 per cent. per annum, and all costs of suit. Jno. D. Robinson, Judge."

Thereafter, in response to appellant's application therefor, the judge filed the following additional findings:

"(1) I find that defendant did not on February 28, 1914, in a telephone conversation between plaintiff and defendant, propose to buy from plaintiff the land in question at $12.50 per acre, and find that such a trade was not consummated on that day between plaintiff and defendant in so far as same could be consummated in the conversation over the phone, or at any time thereafter.

"(2) I find that plaintiff did not agree to execute a deed to defendant on March 1, 1914, and did not agree to send the same on the 2d day of March, 1914, to the bank of T. S. Reed & Son at Bertram.

"(3) I have found the material terms of the contract of December 31, 1913, in the second paragraph of the original findings.

"(4) I find that on May 20, 1914, the deed from plaintiff to the defendant was returned to plaintiff and re-executed for the purpose of having some of the deferred payments made payable to the wife of plaintiff instead of to the plaintiff. John D. Robinson, Judge."

The findings of the trial court are sustained by testimony.

## Opinion.

[1] Appellant's first four assignments of error complain of rulings of the trial court in excluding the testimony of certain witnesses offered for the purpose of proving certain statements made by appellant to such witnesses. One of the witnesses referred to was A. B. McGill, who received appellant's deposit of $1,000 in the bank of T. S. Reed & Son at Bertram, Tex., during the afternoon of February 28, 1914. The bill of exception recites that:

"While the witness A. B. McGill was testifying in behalf of defendant the defendant proved by said witness that on the afternoon of February 28, 1914, defendant, L. R. Barton, came to the bank of T. S. Reed & Son at Bertram, Tex., and deposited with said bank his check on said T. S. Reed & Son for the sum of $1,000 in favor of W. H. McGuire, plaintiff, contract of sale executed by plaintiff and defendant, and deed executed by plaintiff and his wife conveying the W. H. McGuire ranch property, and being same property described in plaintiff's original petition, and defendant offered to prove, and said witness would have testified, that at the time of depositing said check, on February 28, 1914, defendant stated to him that he had that day, over the phone, while at Burnet, Tex., bought said property from plaintiff for $12.50 per acre, and that, according to the verbal agreement made between himself and plaintiff, he was depositing said $1,000 as earnest money, and as security that he would comply with the terms of said sale; that plaintiff had agreed with him (defendant) that he would execute sale contract and a deed of conveyance to said property, and would send same to the bank of T. S. Reed &

Son on the Monday following; to the introduction of which testimony plaintiff objected on the ground that said testimony was immaterial, was had outside of the hearing and presence of plaintiff, not binding on plaintiff, and was self-serving, which objection was sustained by the court, and defendant not permitted to introduce said evidence."

Appellant offered to prove by himself, D. C. Reed, and Emzy Marcus that on the same day he made similar statements to Reed and Marcus, and the court sustained the same objections to that testimony. The contention urged in behalf of appellant seems to be that, inasmuch as it was a controverted question as to whether appellant sold the land to Howze for $18 per acre, as appellee's agent, as claimed and testified to by appellee, or whether on March 28th, as claimed and testified to by appellant, he made a verbal contract to purchase the land from appellee at $12.50 per acre, and thereafter sold it to Howze for $18 per acre; and it also being a controverted question as to whether, on the day appellant claims to have bought the land from appellee, he agreed with the latter to deposit with T. S. Reed & Son the sum of $1,000 as earnest or forfeit money, and whether or not he made said deposit, and the undisputed testimony showing that appellant made a deposit of $1,000 in the bank referred to on that day to the credit of appellee, the excluded testimony of the witnesses referred to was admissible.

We cannot agree with appellant's contention. The testimony referred to was not only hearsay, but was offered for the purpose of proving that appellant, in the absence of appellee, had made certain unsworn statements which were self-serving, and which were offered for the purpose of bolstering and supporting the testimony given by him upon the witness stand. It is said in appellant's brief that at the time referred to no controversy had arisen between the parties, but that fact affords no ground for departing from the rule which excludes such testimony. The court permitted appellant to prove (and there seems to have been no controversy about the fact) that at the time referred to appellant made the deposit in the bank to the credit of appellee; but appellant and appellee differ widely in their testimony as to the prior agreement between them which resulted in the deposit referred to being made. Appellee testified, in substance, that appellant told him that he had found a purchaser for the land, and that in order to secure the deal it was necessary to deposit $1,000 in the bank, which he had done; that appellant also stated that his purchaser would not take the land with certain outstanding liens against it, but if appellee would deed the land to appellant the notes given by appellant could be used to pay off such liens, and the purchaser would then accept a deed from appellant. This was denied by appellant, who testified that appel-

lee deeded him the land in pursuance of his contract of purchase made by telephone on the day he deposited the money in the bank. In substance, appellee's contention is that appellant had found a purchaser for the land at a much larger price than $12.50 per acre, or, at least, was satisfied that he could find such purchaser, and that at the time he procured appellee's agreement to deed the land to appellant the latter had in his mind the intention to defraud the appellee out of several thousand dollars by getting appellee to convey the land to him (appellant) for $12.50 per acre, thereby enabling appellant to convey it to some one else for a larger consideration. Now, if appellee's contention was true, then at the time appellant made the $1,000 deposit in the bank, and made the several statements which were excluded, he had a strong motive for making such statements. To show the existence of such motive it was not necessary to show that at the time the statements referred to were made a controversy had already arisen between the parties, because the apprehension that such controversy might arise would constitute a sufficient motive for making the statements referred to, if appellant's purpose to defraud was as claimed by appellee.

[2] At any rate, the statements made by appellant to the witnesses referred to were not so connected, in point of time or otherwise, with the transaction which had occurred between appellee and appellant, and which appellant contends resulted in the contract of sale, as to render such statements admissible as res gestæ or part of that transaction. Such statements were hearsay and self-serving, and therefore were inadmissible.

In the case of Taliaferro v. Goudelock, 82 Tex. 521, 17 S. W. 792, which was a case for damages, actual and exemplary, on account of the suing out and levy of an attachment at the instance of appellants, the court says:

"As affecting the claim for exemplary damages, evidence was introduced by both parties upon the issue as to whether or not the defendant in the attachment suit was indebted to the plaintiff in that suit in the full amount for which the writ of attachment was sued out. Goudelock, the plaintiff in this suit, testified, that he had on a date named paid $155 on the debt. A witness for the defendant testified that the payment was never made. Plaintiff testified further that he drew the money with which he made the payment from a certain banker on the day on which he made the payment, and told the banker at the time that he wanted the money to make said payment with. Over the objection of the defendants the court permitted the plaintiff to corroborate his own testimony with the evidence of the banker that he did get from him the money as claimed by him, and that he did then make the statement that he wanted it to pay to the plaintiff. It is not pretended that Taliaferro was present when the statement was made. The testimony of the banker was clearly improper, and for the error in admitting it the judgment must be reversed."

In the case of Davis v. Sisk, 49 Tex. Civ. App. 193, 108 S. W. 472, which was a case

in which a partner sold his interest in a firm business and agreed to pay the debts of the firm, the buyer conveying real estate in exchange, the partner failed to pay the debts, and creditors took charge of the business, Davis, the buyer, sued Sisk, the seller, and, the only point in issue being as to whether or not Sisk assumed the firm's debts, the court says:

"The [trial] court did not err in not permitting appellant's (Davis') wife to testify that appellant told her on the way to Mt. Vernon to sign the deeds, and on the return therefrom that the 'trade between himself and the defendant was that defendant was to pay the debts against the firm and business,' etc. This testimony was hearsay and self-serving, and * * * clearly inadmissible."

[3] The fifth assignment of error presents substantially the same question; the contention being that soon after appellant ceased talking with appellee over the telephone (in which conversation he claims to have made the contract to purchase the land) he went to the office of Dayton Moses, an attorney at Burnet, Tex., and told him that he had made such telephone contract with appellee and the terms thereof, the same as he offered to prove by the other witnesses referred to. That conversation was no part of the interview between appellant and appellee, and was properly excluded upon the same objections that were made to the testimony of the other witnesses.

[4] There are several other assignments which charge that certain findings of the trial court are contrary to the preponderance of the testimony. The rule is well settled in this state that appellate courts do not undertake to determine what constitutes a mere preponderance of testimony, and do not set aside findings of juries and trial courts when the evidence is conflicting, unless it is charged and shown that they are so contrary to the overwhelming weight of the testimony as to indicate that the jury or trial judge was actuated by some improper motive or influence. The decisions upon this question are numerous, and are collated in section 1030 under the head of "Appeal and Error" in the first volume of Green's Texas Digest, p. 702.

[5, 6] No such charge is made by the assignments referred to, and, without further comment, they are overruled. Under two of the assignments referred to appellant presents the contention that, as the preponderance of the evidence shows that after appellee was informed and knew that appellant had obtained a much larger sum than $12.50 per acre for the land, he transferred two notes executed by appellant for said land, accepted payment at the rate of $12.50 per acre for 3.37 acres, excess acreage, and thereafter executed a second deed to appellant for the land, therefore he should be held to have ratified what appellant had done, and to be estopped from maintaining this suit. According to appellee's testimony, which the

trial court seems to have accepted as true, he had no notice of the existence of the facts referred to until after appellant had sold the land to an innocent purchaser; and therefore we hold that the fact that he accepted from appellant a certain sum of money for the excess acreage, and that he transferred notes executed to him by appellant as part of the consideration for the land, and executed a new deed, which was done by agreement, and merely for the purpose of having some of the purchase-money notes made payable to appellee's wife, do not prove ratification of appellant's conduct in withholding from appellee about $5,000, to which the facts found by the trial court show he was entitled, nor do such facts constitute an estoppel. Appellee could not then recover the land from such innocent purchaser, and the facts referred to do not estop him from recovering from appellant.

[7] It is also contended on behalf of the appellant that the judgment is excessive, the first contention being that the preponderance of the testimony shows that appellant sold the land to Howze for only $19,243.60, instead of $22,242.60, as found by the trial court; and therefore, if appellee was entitled to recover, such recovery should have been limited to $3,790.47. Appellant's second contention is that the undisputed testimony shows that appellee was entitled to recover only $5,202. The written contract of sale between appellant and Howze required a cash payment of $7,000, and Howze testified that he paid that amount, while appellee testified that he paid only $4,500, and that he released Howze from the payment of the other $2,500. The trial court seems to have accepted the testimony of Howze as true, and decided that issue in appellee's favor. As to the other point, the case is in this attitude: Appellee conceded in his petition that appellant was entitled to a commission of 5 per cent. upon the amount for which he sold the land to Howze. The written contract recited that the sale by appellant to Howze was for $18 per acre, and that he was to make a cash payment of $7,500; but it contained another stipulation stating, in substance, that appellant would remit to Howze the sum of $500, denominated commissions. In other words, when considered in its entirety, the contract of sale required Howze to pay only $7,000 in cash and to give his notes for specified sums as the balance of the consideration. The property sold consisted of 1,235.7 acres, which, at $18 per acre, amounted to $22,242.60, but from that sum must be deducted $500, the amount of the cash payment remitted by appellant, and that leaves $21,742.60. A commission of 5 per cent. upon that sum amounts to $1,087.13, which, when deducted from $21,742.60, the amount of consideration received by appellant from Howze, leaves $20,655.47. The undisputed proof shows that appellee received from appellant only $15,446.25, which leaves a balance of $5,209.22,

189 S.W.—21

which, after conceding, as appellee did, appellant's right to the 5 per cent. commission, is the correct amount that appellee was entitled to recover. This is $475 less than the amount recovered by appellee; but, as the facts in this respect are undisputed, the error that was committed in rendering the judgment for $5,684.22 can be corrected by this court without remanding the case for another trial.

Therefore the judgment of the court below will be reformed so as to limit appellee's recovery to $5,209.22, with interest as stipulated therein; the costs of the appeal to be taxed against appellee.

Reformed and affirmed.